DAVID J. BARR vs. PROVIDENCE TELEGRAM PUBLISHING COM-
PANY.

PROVIDENCE—APRIL 7, 1905.

PRESENT: Douglas, C. J., Dubois and Blodgett, JJ.

(1) *Libel. Newspaper Discussion of Public Measures.*

Defendant published in its newspaper an article concerning plaintiff, a horse-
shoer and carriage smith, and who was also chairman of the democratic
city committee, the publication being a few weeks prior to the annual
election, stating: "The spectacle of such eminent exemplars of demo-
cratic sentiment and republican affiliations as (plaintiff) sitting down in
secret conference and selecting nominees for the democratic party is one
the ridiculousness of which would create nothing but amusement were it
not that the interests of a great party are seriously involved.

"There is something radically wrong with republican institutions and election
methods when individuals of this character can through election machinery
say to thousands of respectable voters that they can not have their choice.
What respectable citizen is there that would select these men who tell them
who they must vote for to represent him in a business transaction?":—

*Held*, that the words used did not touch plaintiff in respect to his calling, and
were not actionable.

*Held*, further, that the words were directed toward the public and political
action rather than the private character of the persons referred to, and so
far as they referred to the plaintiff, to his *quasi* public capacity and action
rather than his personal character.

*Held*, further, that the article was within the legitimate field of discussion
of public measures and party policies, and was not actionable.

TRESPASS ON THE CASE for libel. Heard on demurrer to
declaration, and demurrer sustained.

BLODGETT, J. The material averments in the first count of
the declaration charge an alleged libel as follows: "That the
plaintiff for a long time before and at the time of the committing
of the grievances by the said plaintiff hereinafter mentioned,
had been and was and still is engaged in the business of horse-
shoeing and carriage manufacturing in said Providence and
has always exercised and still does exercise and carry on said
business with honesty, trustworthiness and skill, yet the de-
fendant well knowing the premises and contriving and falsely
and fraudulently intending to injure the said plaintiff in his
said credit and reputation and also in his said business, and to

cause it to be suspected and believed that said plaintiff had conducted himself dishonestly, unfaithfully, and unskillfully in his said business, heretofore, to wit, on the fourth day of October, A. D. 1904, at said Providence, wrongfully, maliciously, and injuriously composed and published and caused to be composed and published in a certain newspaper, called the 'Evening Telegram,' a certain false, malicious, scandalous, and defamatory libel of and concerning the said plaintiff, and of and concerning him in respect to his said business, containing the false, scandalous, and defamatory matter following:

" 'The spectacle of such eminent exemplars of democratic sentiment and republican affiliations as David J. Barr, Thomas J. Dorney, and others of their ilk, sitting down in secret conference and selecting nominees for the democratic party is one, the ridiculousness of which would create nothing but amusement were it not that the interests of a great party are seriously involved.

" 'There is something radically wrong with republican institutions and election methods when individuals of this character can, through election machinery, say to thousand of respectable voters that they can not have their choice, but must submit to the choice imposed upon them through political connivance or something worse.

" 'What respectable citizen is there that would select these men, who tell them who they must vote for, to represent him in a business transaction?' (meaning and intending thereby that he, the said plaintiff, was unworthy and unfit to represent any respectable citizen in a business transaction.)

"By means of which said premises the said plaintiff hath been and still is greatly prejudiced in credit and reputation and brought into public scandal, infamy, and disgrace, and is suspected to have acted dishonestly, improperly, and unskillfully in his said business and has been greatly vexed, harassed, and oppressed."

The second count differs from the first only in that it omits all reference to the plaintiff's occupation, and to each count the defendant has demurred that the language complained of is not actionable.

(1)   As to the first count, the demurrer clearly must be sustained. Search may be made, with the most careful scrutiny, without gathering from the language used the slightest intimation that the plaintiff is a horseshoer or a carriage maker, or, indeed, is engaged in any calling, or occupation; or, if so engaged, that he is not a skilled and competent workman therein.

More than two hundred and fifty years have now passed since the General Assembly of the colony thus declared the law in this behalf (Act of 1647, I R. I. Col. Rec. p. 184): "And we further declare that the partie offended or grieved by such False reports, Slaunders, and Libells as hereafter followeth, may bring his action of slaunder against the reporter and speaker thereof, in case vpon demand he reveale not the author; but if revealed, than against the Author, and shall recover sufficient damages. The cases actionable are these: For a man to say eyther by word or writing, and yet not able to prove it,   .   .   .   that a Tradesman maketh nothing but bad wares; or that a Merchant or Shop-keeper hath nothing but rotten, bad and vnsound wares in his house or shopp, or to speak any thing in the disparagement of a Man's goods that he putts to sale whereby he may be damnified."

The words here used do not touch the plaintiff in respect of his calling, and we see no reason for a departure from the rule thus long established in such cases.

Is the article complained of a libel upon the plaintiff otherwise, and as averred in the second count? To determine this question it is necessary to consider the several statements contained in the publication.

It was agreed at the hearing that the plaintiff, at the time of the publication complained of, was the chairman of the democratic city committee, of the city of Providence, and consequently we may take judicial cognizance of the fact that certain duties and powers are conferred upon him in that capacity by the statutes relating to caucuses, conventions, and elections; so, too, it was agreed that the language used in the declaration was a portion only of a longer article and that the date of publication was October 4, 1904, but a few weeks prior

to the municipal, State, congressional, and presidential elections, to be held on November 7, 1904.

The first averment is, in substance, that the plaintiff is an "eminent exemplar of democratic sentiment and republican affiliations." Clearly this is not a libel. Indeed, it is a matter of public record and common knowledge that in the city of Providence a democratic mayor was elected on the same day that the republican presidential electors were chosen in that city, and in the congressional district in which Providence is situated a democratic representative to Congress was chosen, while republican presidential electors were chosen in the same district; and, indeed, the parallel might be extended to a comparison of the result of the gubernatorial and presidential elections in the State at large.

The next clause of the article complains that "there is something radically wrong with republican institutions and election methods when individuals of this character can, through election machinery, say to thousands of respectable voters that they can not have their choice," &c.

The natural and obvious reference conveyed by the words, "individuals of this character," must be to individuals of the character heretofore described, viz., to men of democratic sentiments and republican affiliations who "sit down in secret conference and select nominees for the democratic party." It may be entirely true that the leadership and official control of the organization of a party should be entrusted only to those who entertain its sentiments and are not affiliated with other political organizations; but in view of the facts known of all men and above set forth as to the action of many thousands of our fellow citizens at the election in question, we can not say that language such as this is a reflection upon the moral character of individuals, but that it is, rather, a criticism of existing methods of party management and organization, which is a far different matter; nor do we know "the method of drawing an indictment against a whole people."

It is even more strongly urged, on behalf of the plaintiff, that the concluding clause contains actionable language, viz.: "What respectable citizen is there that would select these

men, who tell them who they must vote for, to represent him in a business transaction?"

Doubtless a libel may be contained in an interrogation as well as in an affirmation; and doubtless, also, by proper innuendoes, that which is averred generally of a class of men may be shown to apply to a given individual of that class. But the proper function of an innuendo is to explain, and not to modify or enlarge, an averment (*Ames* v. *Hazard*, 8 R. I. p. 145; *Hackett* v. *Providence Telegram Publishing Co.*, 18 R. I. 589), and a careful examination of the words here used confirms the view heretofore expressed of the sense and meaning which should be given to them. "These men" are objectionable because they tell respectable citizens "who they must vote for." Undoubtedly, a respectable and self-respecting citizen would not submit, and should not submit, to be told by any one for whom he must vote. Freemen are not subject to such bondage, and the injunction that the servant is not to be above his master is not without application in public as well as in private life. So it is doubtless true that a self-respecting man would not select as his business representative one who dictated to him how he must vote. But it can not be held to be libelous or defamatory to state these truths or to say of one that he tells another how he must vote. *Reid* v. *Providence Journal Co.*, 20 R. I. 120. If further evidence were needed, it may be found in the next following sentence of the same article, not, indeed, set forth in the declaration, but submitted to the court at the hearing, and thus forming the context of the words complained of: "Why, then, should the Democratic party of Providence be bound to respect their political decisions when they involve business interests of the highest importance?" Here it is apparent that the complaint is wholly directed to the "political decisions" of the persons referred to, and not to any other action on their part.

The closer the article is examined, the more clearly it appears that the words complained of, and published shortly prior to a presidential election, are directed toward the public and political action rather than toward the private character of the persons referred to therein; and so far as they may be held to

refer to the plaintiff, they refer to him in respect of his *quasi* public capacity and action rather than to his personal character as an individual.

We are not unaware that at times the liberty of the press degenerates into unbridled license, to be punished, it may be, even on the criminal side of the court. But there is also a legitimate field of discussion of public measures and party policies, and it is entirely proper that these should be fully and freely discussed. We are of the opinion that the article in question is within these limits and sets forth no cause of action to the plaintiff.

Demurrers sustained, and case remanded to the Common Pleas Division with direction to enter judgment for the defendant.

*Willard B. Tanner*, for plaintiff.

*John W. Hogan and Philip S. Knauer*, for defendant.